**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Lee BROWN,**
**Defendant-Appellant.**

No. 74–2087.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1975.

Decided June 27, 1975.

Certiorari Denied Oct. 20, 1975.
See 96 S.Ct. 225.

John E. Hirschman, U. S. Atty., Charles Goodloe, Jr., Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS and PELL, Circuit Judges, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

Defendant Robert Lee Brown, an inmate at the United States Penitentiary at Terre Haute, Indiana, was convicted by a jury for the murder of Elijah Atkinson, another inmate. He appeals to this Court, contending that the jury could not properly find him guilty of murder in the first degree because there was insufficient evidence of premeditation. He asks this Court to reduce his conviction from first degree murder to second degree murder and to remand the case to the trial court for sentencing.

In the indictment the Government charged that on or about May 9, 1974 at the penitentiary, Brown "with premeditation and malice aforethought, and by means of stabbing, did murder Eijah [sic] Atkinson," in violation of Title 18, United States Code, Section 1111.[1] The defendant entered a plea of not guilty. The parties entered into a stipulation that the penitentiary is within the exclusive jurisdiction of the United States.

Upon trial the Government presented evidence that Brown stabbed Atkinson several times; that he continued to stab Atkinson after a correctional officer yelled at Brown to stop the stabbing and that Atkinson died as a result of the stabbing. The Government sought to prove that Brown willfully, deliberately and premeditatively attacked and killed

Charles W. Vincent, Patrick L. Duffy, Terre Haute, Ind., for defendant-appellant.

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

1. Title 18, section 1111, of the United States Code provides in pertinent part:

 (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or commit-
ted in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

 Any other murder is murder in the second degree.

Atkinson and that he was guilty of first degree murder. Brown offered evidence that Atkinson's death occurred as a result of his efforts to defend himself against an attack by Atkinson. At the close of the Government's case in chief, Brown's counsel orally moved for judgment of acquittal and also moved to withdraw the issues of first and second degree murder from consideration of the jury on the ground of insufficient evidence of premeditation and malice aforethought. The court overruled both motions. The motions were renewed at the close of the case and were overruled. The jury found Brown guilty of murder in the first degree as charged in the indictment. After the verdict Brown filed a motion for judgment of acquittal and a motion for a new trial. The court overruled both motions and entered judgment convicting Brown of murder in the first degree and sentencing him to life imprisonment.

■ Defendant states that the "sole issue" that he is raising in this appeal "is whether there was sufficient evidence of premeditation to support the jury's verdict of guilty of first degree murder under 18 United States Code Section 1111". In determining the sufficiency of evidence, a Court of Appeals must view the evidence and all the reasonable inferences which may be drawn therefrom in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Esquer,* 459 F.2d 431, 433 (7th Cir. 1972), *cert. denied* 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973); *United States v. Tubbs,* 461 F.2d 43 (7th Cir. 1972), *cert. denied* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 124 (1972). Seventeen witnesses testified at the trial—two of them supervising officers, five correctional officers, six inmates, the physician who examined Atkinson and pronounced him dead, the physician who performed an autopsy, a physician's assistant, and the defendant himself. The evidence is briefly summarized as follows:

It is uncontroverted that on the evening of May 9, 1974 Brown stabbed Atkinson several times in D-Unit, a living quarters unit at the penitentiary, where both were residents. D-Unit is a long corridor with two tiers of cells on each side. On the west side of the cell house is a mop room and a supply room, approximately 20 to 25 feet apart. Anywhere between five and forty-five minutes, but within an hour before the stabbing occurred, Brown and his cell had been searched. No weapon was found in Brown's cell or on his person, although an item variously described as a radio speaker or piece of electronic equipment was found in the cell. As the search ended, James D. Smith, one of the three correctional officers making the search, said Brown asked him who was the "snitch". The officer testified Brown then said, "If I find that (expletive deleted), I send him to you in a pine box". Smith explained that a "snitch" is "someone that tell on another inmate; they are doing something wrong or have something in his possession". Another correctional officer, Robert Zink, said he heard Brown say to Smith that "the next time a (expletive deleted) leaves his name [Brown's] name down there, he [Brown] will send him back to him in a box". A third officer did not hear Brown make any statement.

Later, about 8 P.M., inmate Atkinson was cleaning his cell and spilled some water in the corridor area in front of his cell. Correctional Officer Zink, who was on duty in D-Unit at the time, told Atkinson to get a mop and remove the water before someone slipped in it. About the same time, Zink was asked by another inmate to get some supplies from the supply room. Atkinson headed toward the mop room just ahead of Zink as Zink went to the supply room. Zink said Brown passed him as he went to the supply room. While getting something from the supply room, Zink heard screaming and the sound of buckets being kicked over in the mop room area. Zink testified he went to the mop room, looked in, saw Atkinson on his knees and Brown stabbing Atkinson with a long, pointed weapon. Zink further testified

that he yelled to Brown to stop the stabbing but that Brown continued to stab Atkinson for about a minute and a half after he yelled to Brown to stop. Atkinson managed to crawl from the mop room to the doorway of the mop room with the upper portion of his body being through the doorway into the corridor. Zink testified Brown followed Atkinson to the doorway and there Brown stood over Atkinson and stabbed him four to six times. Some of the inmates in D-Unit saw Brown stab Atkinson in the day room corridor. One saw Atkinson fall partway out of the doorway of the mop room and he testified Brown stepped over Atkinson, then stopped and stabbed him four or five times. Another inmate saw Brown stab Atkinson two times near the mop room. Another testified he saw Atkinson bleeding and on his knees in the mop room door and Brown standing in the hall.

Brown's version of the circumstances surrounding the stabbing is substantially different. He testified that after his cell was searched, he decided to go down the hall to the hot water fountain to make some coffee and since the hot water dispenser was being used, he went to the mop room for hot water. He testified Atkinson came to the door with a weapon in his hand and accused him, Brown, of breaking into his [Atkinson's] locker and that Atkinson said, "He would fix where I wouldn't break in nobody else's locker". Brown said Atkinson then raised the weapon to stab him; the two tussled for two or three minutes in the mop room until Brown got the weapon away from Atkinson at which time he [Brown] began sticking Atkinson. On cross-examination Brown testified that he and Atkinson were in the mop room "three, four—five minutes" and that "we tussled in there two or three minutes before I got the screwdriver from him". In support of Brown's testimony on self-defense, the defense called James W. Mumford, an inmate, who testified he saw Atkinson come across from his cell with a "shank" in his hand. Mumford said he saw a hand come through the mop room door and catch Atkinson's hand and that he then heard the commotion in the mop room and then Brown came out the door and Atkinson was falling on the floor.

As to the weapon, Officer Zink testified that as Atkinson proceeded ahead of him on the way to the mop room, Zink did not see anything in Atkinson's hand. At the time Atkinson was clad only in undershorts and blue athletic shorts. Brown admitted that at the time he was still angry about his cell being searched. On cross-examination he admitted most of the stab wounds were in Atkinson's back. There is no evidence in the record that Brown sustained any injury. After the stabbing Brown started walking toward the rear of D-Unit and threw the weapon into cell D-31. Zink immediately locked the cell and asked Brown to return to the front of the unit, which he did. The weapon,—variously described as a long, pointed weapon, "shank," screwdriver and knife,—was recovered from the cell and admitted in evidence.

Atkinson was pronounced dead shortly after 8 P.M. in the prison hospital. He had suffered 21 stab wounds on his face, neck, sides, chest and back. Brown was questioned in the captain's office and later taken to another cell. On the way another inmate asked Brown what had happened and a guard testified that Brown said, "I just got rid of a punk who's been bothering me". Another guard heard a similar statement.

■■ A jury has the responsibility of weighing the evidence. The jurors heard and saw Brown testify. They heard and saw the other witnesses testify. In evaluating credibility and determining the facts, it was for the jury to consider any variations in the testimony and any inconsistencies. As we pointed out in *United States v. Esquer, supra,* at 433, the reviewing court cannot substitute its judgment as to the credibility of witnesses for that of the jury. *See also*

*United States v. Miles,* 401 F.2d 65, 67 (7th Cir. 1968); *United States v. Jones,* 302 F.2d 46, 47 (7th Cir. 1962). There is little in the evidence here to indicate any action by Atkinson to frighten Brown except Brown's own testimony. The jury heard Brown's self-defense testimony and any conflict in the evidence as to his acting in self-defense was resolved by the jury in its determination of Brown's guilt. There is no reason to interfere with that determination. The jury was given an instruction on murder in the first and second degree and found Brown guilty of first degree murder and not of the lesser crime. We believe there was sufficient evidence to support the jury's finding of murder in the first degree.

 It is well settled that the question of whether or not reflection and consideration amounting to deliberation required for first degree murder actually occurred must be determined by the jury, properly instructed by the court, from the facts and circumstances of the case. 1 Wharton, *Criminal Law and Procedure* (1957) § 267. *Bostic v. United States,* 68 App.D.C. 167, 94 F.2d 636, 638 (1937), *cert. denied* 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1938). The jury received from the court ample instructions as to malice, malice aforethought, premeditation, specific intent, self-defense and the essential disputed elements of first degree murder, second degree murder and voluntary manslaughter.[2] The jury was cautioned in one instruction that the fact the defendant was an inmate at the penitentiary "is not to be considered by you for any purpose in determining his guilt or innocence" and

2. The court gave the following instruction on premeditation:

Section 1111 of Title 18 of the United States Code further provides that:
"Every murder perpetrated by . . . lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree. Any other murder is murder in the second degree."

By "willful, deliberate and premeditated" is meant that the killing is done after a period of time for prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate design varies as the minds and temperaments of men differ, and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intent, which is of sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for murder. Thus, a murder which is perpetrated by any kind of willful, deliberate and premeditated killing, with malice aforethought, is murder in the first degree.

But if done with malice aforethought, but without deliberation and premeditation, that is, without the willful, deliberate and premeditated intent to take life which is an essential element of first degree murder, then the offense is murder in the second degree. The jury was instructed as to the essential disputed elements of the crimes of murder in the first and second degree and the crime of voluntary manslaughter:

The essential disputed elements of the crime of murder in the first degree, each of which the government must prove beyond a reasonable doubt before you would be justified in finding the defendant guilty of such offense, are as follows:
1. That the defendant killed Elijah (Elijah) Atkinson unlawfully and without justification.
2. That such killing was done by the defendant with premeditation.
3. That such killing was done by the defendant with malice aforethought.
4. That in killing the deceased, the defendant was not acting in self-defense.

The essential disputed elements of the crime of murder in the second degree, each of which the government must prove beyond a reasonable doubt before you would be justified in finding the defendant guilty of such offense, are as follows:
1. That the defendant killed said decedent unlawfully and without justification.
2. That such killing was done by the defendant with malice aforethought.
3. That in killing the deceased, the defendant was not acting in self-defense.

The essential disputed elements of the crime of voluntary manslaughter, each of which the government must prove beyond a reasonable doubt before you would be justified in finding the defendant guilty of such offense, are as follows:
1. That the defendant killed said decedent unlawfully and without justification, but without malice, upon a sudden quarrel or heat of passion.
2. That in killing the deceased, the defendant was not acting in self-defense.

Each of such elements, as to each offense, is denied by the "not guilty" plea of the defendant.

that the "presumption of innocence applies to a defendant in each and all cases in which a defendant may be accused, and a present confinement would not destroy or minimize such presumption in any degree whatever". Brown's counsel did not object to the instruction on premeditation which stated that by "willful, deliberate and premeditated is meant that the killing is done after a period of time for prior consideration" and that "the duration of that period cannot be arbitrarily fixed". By the same instruction the jury was informed that if the killing was done "with malice aforethought, but without deliberation and premeditation, that is, without the willful, deliberate and premeditated intent to take life which is an essential element of first degree murder, then the offense is murder in the second degree". An instruction to a jury is not to be judged in "artificial isolation" but viewed in the context of the overall charge. *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). As this Court said in *United States v. Bessesen,* 445 F.2d 463, 468 (7th Cir. 1971), "[j]ury instructions must be considered in their entirety," and the instructions given and taken as a whole in the case at bar were adequate for the jury to weigh the issue of premeditation.

■ Although it is clear that deliberation and premeditation involve a prior design to commit murder, the authorities are in accord that no particular period of time is necessary for such deliberation and premeditation.[3] Although there is some conflict among the courts as to whether there need be any appreciable time for reflection and consideration between the formation and execution of the design, the courts which have held that some appreciable time must elapse

have not attempted to measure the time period. For example, in *Bostic v. United States,* 68 App.D.C. 167, 94 F.2d 636 (1937), *cert. denied* 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1938), the court held that some appreciable time must elapse but that the period of time "does not require the lapse of days or hours, or even minutes".

■ Appellant argues that there is no affirmative proof of premeditation on his part. Despite the difficulties in adducing proof as to a state of mind, premeditation and deliberation are susceptible of proof. Of course the mental processes of Brown are wholly subjective and cannot be proved directly, but premeditation may be established by adducing evidence from the facts and circumstances surrounding the killing. Although Brown testified he acted in self-defense, the jury did not believe him. The evidence shows that Zink saw Brown stabbing Atkinson in the rear of the mop room estimated to be 10 to 15 feet in length. Zink yelled at Brown to stop the stabbing. He didn't stop. Zink testified the stabbing went on for about a minute or a minute and a half after he told him to stop. Atkinson then crawled from the mop room part-way into the corridor, a distance of several feet, and was in no position to defend himself. Yet Brown followed him, stepped over him, stopped and then continued to stab him repeatedly.[4] This was a vicious and prolonged attack. Brown stabbed Atkinson not once but 21 times. The stabbings in the corridor were deliberate and not committed on impulse. Atkinson was by then in a helpless position and offering no resistance, and certainly at this point Brown was not acting in fear of injury or in self-defense. The jury was entitled to make reasonable deductions and inferences from the proven

---

3. 1 Wharton, *Criminal Law and Procedure* (1957 ed.) § 267 and cases cited therein; 40 C.J.S. *Homicide* § 33 and cases cited therein; 29 C.J. *Homicide* § 97 and cases cited therein.

4. James Eugene Powell, an inmate, called as a witness by the Government, testified: "And at that time Atkinson fell out of the door about

halfway and was on the floor and raised upon on one elbow and Mr. Brown stepped out over him and, you know, like he was going to keep going, you know past him—and stopped and hit him four or five times and then kept going."

facts. It could have concluded from the evidence that there was ample opportunity for premeditation, before and during the repeated stabbings in the mop room, and certainly during the time which elapsed between the stabbings in the mop room and the time it took for Atkinson to cràwl out of the mop room into the corridor, where the stabbings were resumed. The jury was not compelled to draw such a conclusion, but it properly could so do. We believe the facts and circumstances surrounding the resumption of the stabbings in the corridor are the strongest in establishing premeditation and, standing alone, justified the jury's finding that the killing was willful, deliberate, malicious and premeditated, with malice aforethought.

This case is in many respects analogous to the case of *United States v. Esquer, supra.* There, too, certain details of a stabbing incident at a Federal penitentiary were in conflict. The Government offered testimony by two inmates that Esquer left his position behind a steam table in the prison dining room, walked to where Joseph Madden, a fellow prisoner, was sitting and stabbed him in the back. This version was partially corroborated by guards although they did not see the actual stabbing. Esquer's version was substantially different. He offered testimony of various witnesses to the effect that when Esquer walked behind the deceased's table, Madden sprang up to attack him with a knife which he had concealed in his lap, and that Esquer wrestled with his assailant. When Esquer was apprehended he had the murder weapon in his hand. Madden's death was caused by one of three deep puncture wounds in the deceased's back.. In *Esquer,* no witness was able to relate how Esquer got possession of the knife or how the wounds were inflicted. The jury concluded Esquer premeditatively attacked and killed

Madden. In that case we found the evidence was sufficient to sustain the conviction. In the case at bar, appellant also contended that he acted in self-defense. Here we also have contradictory testimony as to who had possession of the weapon. There was evidence the stab wounds were mostly in the back. The jury determined Brown was not acting in self-defense. Here Brown continued to stab Atkinson after he was told to stop and, after some appreciable time elapsed, the stabbings were resumed. The evidence of premeditation is even stronger here.

■ Counsel for the defendant admits the circumstances of the killing were brutal but contends the brutal facts of the killing itself are the real reason for the jury's verdict. He argues, in effect, that the jury looked at the facts and ignored the statute. He claims that no inference of premeditation is to be drawn from the violence or brutality of the crime alone and that proof of a brutal crime standing alone is not sufficient evidence to support a finding of premeditation. To support this claim he cites four State court cases.[5] We, of course, are not bound by, or obligated to agree with a construction by a State court. Defendant also cites *Austin v. United States,* 127 U.S.App.D.C. 180, 382 F.2d 129 (1967) where the evidence showed the defendant stabbed and cut the victim a total of 50 times. There the defendant and victim had been drinking in a bar prior to the killing. *Austin* is clearly distinguishable from the case at bar in that the court held that the evidence was as consistent with an impulsive and senseless frenzy, possibly heightened by drink, as with premeditation, and consequently did not permit a reasonable juror to find beyond a reasonable doubt that there was premeditation. We believe the evidence of such a violent killing strongly tends to prove the killing

5. People v. Gill, 43 Mich.App. 598, 204 N.W.2d 699 (1972); People v. Caldwell, 43 Cal.2d 864, 279 P.2d 539 (1955); People v. Holt, 25 Cal.2d 59, 87, 153 P.2d 21, 36; People v. Smith, 33 Cal.App.3d 51, 108 Cal.Rptr. 698 (1973).

was done maliciously and with premeditation and that it also reflects the state of mind of Brown before and during the successive stabbings. The fact that cruelty or brutality is manifested in a killing will raise an inference of malice and the length of time of premeditation is not material. *Evans v. United States*, 122 F.2d 461, 466 (10th Cir. 1941), *cert. denied* 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558 (1942).

The defense refers to the time between the stopping of the stabbings in the mop room and their resumption in the corridor as only a "pause," and contends it was not proved that the intervening time constituted a legitimate opportunity for premeditation. We have found the evidence showed an interval for reflection and that this killing was not a mere persistence of an initial impulse or passion. There was time for second thought. *Fisher v. United States*, 328 U.S. 463, 470, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946). Further, the defense makes an argument, which the trial judge found interesting, and we might term ingenious, that there was no proof of when the three fatal wounds, out of the 21, were inflicted and that it was not reasonable for the jury to infer from Atkinson's crawling out of the mop room into the corridor that the three fatal wounds were inflicted in the corridor. We disagree. The evidence showed that Atkinson tried to escape by crawling out of the mop room and the jury could reasonably have found that he had not been fatally wounded by that time, and that the stabbings in the corridor were the fatal wounds, inflicted after time for premeditation.

■ Appellant suggests there is lack of evidence as to motive. It is not essential to the Government's case. *Pointer v. United States*, 151 U.S. 396, 414, 14 S.Ct. 410, 38 L.Ed. 208 (1894); *Reed v. United States*, 377 F.2d 891, 893 (10th Cir. 1967). Appellant argues that neither his statement made before the stabbing, about a "snitch," nor his statement, after the killing, about getting rid of a "punk" bothering him, supports a finding of premeditation. We believe both statements were properly accorded probative value and it is only required that circumstantial evidence be sufficiently relevant to have probative value. A jury is not limited to drawing from the evidence only those inferences which are most favorable to the accused. *United States v. Valenti*, 134 F.2d 362, 364–365 (2nd Cir. 1943), *cert. denied* 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712 (1943). Reasonable jurors could have inferred from the first statement that Brown thought Atkinson was the "snitch" and had given information which led to the search of Brown's cell. The Government's position in the District Court was that it was not necessary to show Atkinson was in fact the "snitch" but only to show Brown thought Atkinson was the "snitch". Brown denied he thought Atkinson was the "snitch". But there was circumstantial evidence from which the jury could infer that Brown felt Atkinson was the "snitch". There is in the record testimony that Atkinson would wander from cell to cell. One inmate testified Atkinson came to his cell uninvited, and the jury could have inferred that Atkinson was looking at other inmates' cells for contraband so as to report to the officers. Atkinson was stabbed within the hour after Brown made the statement about the "snitch" and it seems clear the jury did not believe Brown's testimony as to the origin of the weapon. After the killing, Brown made the statement about getting rid of a "punk" bothering him, and from this the jury could have inferred that Brown harbored animosity toward Atkinson. As to intent, every sane man is presumed to intend the natural and probable consequences of his own act. *Allen v. United States*, 164 U.S. 492, 496, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The jury could have fairly inferred that when Brown repeatedly stabbed Atkinson, was told to desist, stopped and then resumed the stabbings, the destruction of Atkinson's life was intended. From Brown's

continued persistence, after a time for reflection, the jury could properly have inferred premeditation.

We find no error in the trial judge's disposition of defendant's motions. At the conclusion of the Government's case, Brown moved for judgment of acquittal and the motion was overruled. He then moved for withdrawal from the jury's consideration of the charge of first and second degree murder, which motion was also overruled. In considering these motions, the test to be applied by the trial court was whether there was substantial evidence from which the jury might find Brown guilty beyond a reasonable doubt when the evidence and all legitimate inferences therefrom were viewed in the light most favorable to the Government. *United States v. Harris*, 441 F.2d 1333 (10th Cir. 1971). The trial court had by then heard the testimony of eyewitnesses to the killing and was free to draw inferences from the evidence adduced in the Government's case in chief. The evidence was sufficient for the court to conclude that a jury of impartial and fairminded persons could reasonably infer from the facts surrounding the killing that there was proof of murder in the first degree. After Brown presented evidence in his defense and at the conclusion of the trial, the motions were renewed. Again the test to be applied to these motions was to be based on all of the evidence and legitimate inferences to be drawn therefrom in the light most favorable to the Government. *United States v. Tubbs, supra.* The motions were again overruled. The trial court properly submitted the charge of first degree murder to the jury.

There was sufficient evidence to sustain the jury's verdict of murder in the first degree, and we find no basis here for reducing the conviction to one of lesser degree or for setting aside a verdict which so manifestly might have been reached by a jury upon the evidence before it. Brown was sentenced to life imprisonment for first degree murder. If his sentence were reduced to second degree murder, he could receive the same sentence for second degree murder as he did for murder in the first degree. 18 U.S.C. § 1111.

We see no reason to disturb the judgment of conviction of the District Court and it is affirmed.