# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1746

_____

C. Russell Gould,                                *
                                                 *
            Appellant,                           *
                                                 *    Appeal from the United States
v.                                               *    District Court for the Western
                                                 *    District of Missouri.
United States of America,                        *
                                                 *
            Appellee.                            *
_____                            *
                                                 *
William R. Zanetello,                            *
                                                 *
            Appellant,                           *
                                                 *
v.                                               *
                                                 *
United States of America,                        *
                                                 *
            Appellee.                            *

_____

Submitted:  September 25, 1998

Filed: November 18, 1998

_____

Before  BOWMAN,  Chief Judge,  and  WOLLMAN and  MORRIS  SHEPPARD
        ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

William Zanetello and Russell Gould, strangers to each other at the time, were injured on different days while sledding down the back of a dam built, operated, and owned by the Army Corps of Engineers (the Corps) at Longview Lake in Jackson County, Missouri. Each of them was seriously hurt when his sled crashed after having been propelled into the air upon contact with a sloped terrace that was three or four feet high. Each sued the United States under the Federal Tort Claims Act. See 28 U.S.C. § 1346(b)(1), §§ 2671-2680.

Both lawsuits asserted a theory of "premises liability," that is, they claimed that the plaintiff was injured by an unreasonably dangerous condition that existed on property of the United States. After a bench trial, the court entered judgment for the United States based on its findings that both Mr. Zanetello and Mr. Gould actually knew, or in any event could reasonably have been expected to discover, the risk of becoming airborne.

Mr. Zanetello and Mr. Gould appeal. We affirm the judgment with respect to Mr. Zanetello. With respect to Mr. Gould, we vacate the judgment and remand the case for further proceedings not inconsistent with this opinion.

I.

Mr. Zanetello and Mr. Gould contend that the unreasonably dangerous condition relevant in this case was the presence of the terrace and that the relevant risk was that a person's sled could be propelled four to six feet high after crossing the terrace. That risk is relevant, of course, only if it is what actually caused the plaintiffs' injuries.

With respect to Mr. Zanetello, however, there was no evidence that he in fact reached such a height. At trial, neither he nor either of his two sledding partners estimated the height that he achieved, and the trial court found only that Mr. Zanetello

"became airborne." The evidence was simply insufficient to support a conclusion that Mr. Zanetello was injured after being propelled four to six feet in the air. We therefore affirm the trial court's judgment for the United States with respect to Mr. Zanetello.

With respect to Mr. Gould, David Gross testified that Mr. Gould achieved a height of four to six feet. Adam Gross testified that Mr. Gould flew over his head, although he could not remember if he was standing at that time, and further testified that Mr. Gould "flew close to eight feet, somewhere around there, five to ten feet." Although the matter is not entirely free from doubt, it seems evident that the trial court believed David Gross's testimony that Mr. Gould achieved a height of four to six feet. The trial court's decision relied substantially on Mr. Gross's testimony for the crucial facts that the terrace was visible on the day of the accident, that Mr. Gross made a sled run and went airborne prior to Mr. Gould's run, and that Mr. Gould's sled "lost contact with the ground and flew a number of feet through the air." It thus appears to us that the trial court credited Mr. Gross's testimony concerning the height Mr. Gould's sled reached, and we therefore turn to a consideration of the Missouri law applicable to this kind of case.

II.

In Wells v. Goforth, 443 S.W.2d 155 (Mo. 1969) (en banc), overruled in part on other grounds, Rowe v. Farmers Insurance Company, Inc., 699 S.W.2d 423, 424-25 (Mo. 1985) (en banc), the Missouri Supreme Court stated that the principles applicable to this kind of case are those outlined in § 342 of the Restatement (First) of Torts. Missouri law imposes liability on a landowner when a licensee is injured on the owner's land only if the owner had actual knowledge of a condition presenting an unreasonable risk, and had a reason to believe that a licensee would not discover the condition or realize the risk. See Restatement (First) of Torts § 342 at 932 (1934).

The Missouri courts have held that landowners have no reason to believe that open and obvious conditions or risks will not be discovered, and that landowners do

have a reason to believe that conditions or risks will not be discovered if they are not open and obvious.  See, e.g., Vogt v. Dace, 762 S.W.2d 838, 841 (Mo. Ct. App. 1988), and Birdsong v. Adolf, 724 S.W.2d 731, 734 (Mo. Ct. App. 1987).  The risk, in the ordinary case, is likely to be discovered when the relevant physical condition is open and obvious.   See Restatement (First) of Torts § 342,  comment b, at 932.  "[T]he fact that the condition is obvious," so that a licensee could reasonably be expected to know of or discover it, "is usually sufficient to apprise [a licensee], as fully as the possessor, of the full extent of the risk involved in it."  Id.

Much of the Missouri case law deals with situations in which full knowledge of the risk necessarily followed from an injured party's observation of a physical condition.  For example, the risk of injury is obvious when jumping or diving into a lake from a cliff that is 70 feet high, Birdsong, 724 S.W.2d at 734, and the risk of being hit by a falling ladder is obvious when the ladder is clearly unsecured, Fisher v. Northmoor United Methodist Church, 679 S.W.2d 305, 305-06 (Mo. Ct. App. 1984).   But these cases cannot be read as creating a rule that a licensee's knowledge of a physical condition is always enough to free a landowner from liability to a licensee; the obviousness of the condition, as the Restatement notes, is only "usually" enough to apprise the licensee of the risk.

A frequently cited Missouri case, moreover, states that a dangerous condition is open and obvious as a matter of law only if the injured party "should reasonably be expected to discover it *and* realize the danger" (emphasis supplied).  Harris v. Niehaus, 857 S.W.2d 222, 226 (Mo. 1993) (en banc).  As a different section of the Restatement recognizes, " 'knowledge' of the risk involved in a particular condition implies not only that the condition is recognized as dangerous but also that the chance of harm and the gravity of the threatened harm are appreciated."  Restatement (First) of Torts § 340, comment b, at 928 (1934); see also Restatement (Second) of Torts § 342, comment a, at 210 (1965).

We do not believe that an appreciation of the risk involved in this case necessarily followed from the obviousness of the physical condition. The question here is not simply whether Mr. Gould knew of or could reasonably have been expected to discover the terrace itself, or even the possibility of becoming airborne upon contact with it, but whether he knew of or could reasonably have been expected to discover the risk of flying four to six feet into the air -- a risk significantly different from the risk of merely becoming airborne.

Before Mr. Gould's own sled run, the trial court found, Mr. Gould had seen David Gross achieve a height of "a couple of feet." There was no evidence, however, that Mr. Gould saw anyone reach a height above four feet. According to the evidence, therefore, the highest that Mr. Gould saw anyone fly was "a couple of feet." The difference between "a couple of feet" and four to six feet is, we believe, both factually material and legally significant. It seems clear to us that the risk associated with achieving a height of four feet or more on a speeding sled is of a different order of magnitude from the risk associated with achieving a height of a "couple of feet." A reasonable person might well risk being propelled two feet high (or even slightly higher) for the thrill of it, we think, but risking the injuries likely to result from going up to six feet high would not, it seems to us as a matter of law, be the act of a reasonable person. The evidence is that Mr. Gould did not know of, and, we hold, could not reasonably have been expected to discover, the risk of being propelled more than four feet high. Because this risk was not open and obvious, the Corps had a reason to believe that Mr. Gould would not discover it.

The trial court found that the Corps did not know of the risk that a sled could be propelled up to six feet high. The only evidence at trial in this respect, however, was from the park ranger responsible for the dam. He stated unequivocally that he had seen sledders fly up to six feet in the air after hitting the terrace. We therefore hold that the trial court's finding with respect to the knowledge of the risk by the Corps was clearly erroneous.

Since the Corps did in fact know of the risk that injured Mr. Gould, since Mr. Gould did not know of that risk and could not reasonably have been expected to discover it, and since the Corps had a reason to believe that Mr. Gould would not discover it, the Corps failed in its duty to take reasonable steps to protect Mr. Gould from that risk. It is therefore liable for the injuries that the risk caused Mr. Gould. Since we have no findings by the trial court, however, on the question of whether, or to what extent, the risk that Mr. Gould faced caused his injuries, we remand the case to the trial court for further proceedings on that issue. If the evidence presented to the court does not prove by a preponderance of the evidence that Mr. Gould suffered injuries attributable to the risk of being propelled four to six feet in the air, then the Corps is entitled to judgment. In other words, Mr. Gould can recover only for such injuries as would not have occurred but for the risk that he did not appreciate. If the injuries were caused by a risk that he did appreciate, namely, the risk of being propelled a "couple of feet" into the air, then he can recover nothing. Mr. Gould, as plaintiff, of course bears the burden of proof on the issue of damages.

### III.

For the reasons stated, we affirm the judgment of the trial court with respect to Mr. Zanetello. With respect to Mr. Gould, we vacate the judgment and remand to the trial court for further proceedings not inconsistent with this opinion.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-