# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1545

SUZANNE MATHENY,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:04cv414—**Andrew P. Rodovich**, *Magistrate Judge.*

———————

ARGUED SEPTEMBER 12, 2006—DECIDED DECEMBER 4, 2006

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* One wintry day, Suzanne Matheny went sledding on a snow-covered sand dune in the Indiana Dunes National Lakeshore, a national park. Her sled struck a rusty pipe that protruded (the record is unclear how far) above the surface of the dune but was concealed by snow. A year earlier a child had had a similar accident in the same area and park rangers had removed a number of protruding pipes but had failed to discover and remove all of them; objects buried in the dunes may be exposed part of the time and concealed part of the time, owing to the

shifting of the sand. The pipes had not been installed by the federal government; they were the detritus of cottages built on the dune, and torn down, before the dune became part of the national park.

Matheny suffered serious injuries from the collision with the pipe and brought suit for damages against the United States under the Federal Tort Claims Act. A magistrate judge granted summary judgment for the government on the ground that Indiana law would not allow Matheny to prevail. A magistrate judge is authorized to enter a final judgment only with the written consent of the parties, and our circuit rule 28(a)(2)(v) requires the parties to indicate in the jurisdictional statements in their briefs the dates on which the parties consented. Both parties ignored the rule, but after we directed their attention to the omission they supplemented the record with their written consents.

The Tort Claims Act waives the federal government's sovereign immunity only insofar as the defendant, were it not the government, would be liable to the plaintiff under the law of the state in which the conduct that is alleged to be tortious occurred. 28 U.S.C. §§ 1346(b)(1), 2674. That was Indiana, and we may assume without having to decide that Matheny made out a prima facie case of negligence under Indiana law. There is, it is true, support for the view that in an area specifically designated for skiing a skier has to assume that danger may be lurking beneath the snow in the form of rocks, gullies, or tree stumps, and hence that he assumes the risk of an accident due to these irregularities even though they are hidden. *Wright v. Mt. Mansfield Lift, Inc.*, 96 F. Supp. 786, 790-92 (D. Vt. 1951); *Kaufman v. State*, 172 N.Y.S.2d 276, 282-83, (N.Y. Ct. Cl. 1958); cf. *Knight v. Jewett*, 834 P.2d 696, 705 (Cal. 1992); *Shukoski v. Indianhead*

*Mountain Resort, Inc.*, 166 F.3d 848, 850-51 and n. 1 (6th Cir. 1999) (discussing statutes in a number of states, not including Indiana, that provide that skiers assume risks arising from variations in terrain). Skiing is a dangerous sport, and only on novice trails do skiers expect or indeed desire a perfectly manicured slope. (So the rule for such trails may be different. *Sunday v. Stratton Corp.*, 390 A.2d 398, 401-03 (Vt. 1978).) Sledding is less dangerous. See *Kooly v. State*, 958 P.2d 1106, 1109 (Alaska 1998). The sledder reasonably believes himself less likely to encounter and be injured by dangerous obstacles than a skier would be; and protruding pipes in an area that to all appearances has never had a building on it are at once more dangerous and less to be expected than a rock, a gully, or a tree stump. Less dangerous doesn't mean safe. *Olson v. Bismarck Parks & Recreation District*, 642 N.W.2d 864, 871 (N.D. 2002). In the *Kooly* case, a three-year-old drowned when he sledded into a partially frozen creek at the bottom of a hill that was a popular venue for sledding.

In our case the earlier accident to a sledder had led to the discovery of a number of pipes in the area; and conventional legal principles, were they applicable, might require the park authorities either to scour the dune and remove all the pipes or to post warning signs; or possibly to fence the dune, or to post signs forbidding entry, rather than warning of the specific hazard. *Bears v. Hovey*, 269 A.2d 77, 78-79 (Conn. 1970); *Gould v. United States*, 160 F.3d 1194, 1196-97 (8th Cir. 1998); *Maalouf v. Swiss Confederation*, 208 F. Supp. 2d 31, 39-40 and n. 7 (D.D.C. 2002); see *Kooly v. State*, *supra*, 958 P.2d at 1109 and n. 7.

But Indiana—in common with all other states, Terence J. Centner, "Revising State Recreational Use Statutes to Assist Private Property Owners and Providers of Outdoor Recre-

ational Activities," 9 *Buff. Envtl. L.J.* 1, 2-3 (2001)— has a law intended to encourage landowners to allow the public to use their land for recreational purposes. *McCormick v. State*, 673 N.E.2d 829, 834 (Ind. App. 1996); *Kelly v. Ladywood Apartments*, 622 N.E.2d 1044, 1047 (Ind. App. 1993). The Indiana Recreational Use Statute, Ind. Code § 14-22-10-2, excuses the landowner from liability (including to sledders, *Civils v. Stucker*, 705 N.E.2d 524, 527 (Ind. App. 1999); *Kelly v. Ladywood Apartments*, *supra*, 622 N.E.2d at 1048; see Ind. Code. §§ 14-22-10-2(d), (e)) unless the recreational users of his property are "business invitees in commercial establishments" or "invited guests," or unless the landowner has created an attractive nuisance or the injury was "caused by a malicious or an illegal act" of the owner. Ind. Code §§ 14-22-10-2(f)(1), (g). The district court ruled that none of the exceptions applied to Matheny's accident.

She certainly was not a business invitee in a commercial establishment; the Indiana Dunes National Lakeshore is not a commercial establishment. Was she an "invited guest," that is, "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public"? *Drake by Drake v. Mitchell Community Schools*, 649 N.E.2d 1027, 1030 (Ind. 1995), quoting *Restatement (Second) of Torts* § 332(2) (1965). Signs prohibiting sledding are posted in a number of places in the national park, but not where the accident occurred. Nor is there any indication that Matheny knew about the prohibition. The park invites the public to attend lectures and guided tours and to use facilities such as beaches (of course), a visitors' center, a learning center—and a number of trails for cross-country skiing. Cross-country skiing might seem pretty close to sledding in point of safety. So conceivably (no stronger word is possible) a reasonable person, reasoning by analogy as it were, might think she was being

invited to sled too (though not to engage in downhill skiing, which is much more dangerous than cross-country skiing). Cf. *Civils v. Stucker*, *supra*, 705 N.E.2d at 527-28; *McCormick v. State*, *supra*, 673 N.E.2d at 835 ("an invitation is conduct which justifies others in believing that the possessor desires them to enter the land"). The park would then have a duty through signage or otherwise to correct the misimpression. There is a hint (no more) in *Markle v. Hacienda Mexican Restaurant*, 570 N.E.2d 969, 975 (Ind. App. 1991), as well as in cases from other jurisdictions, such as *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 912-13 (7th Cir. 1985) (Wisconsin law), that such an argument might fly.

But we think not. Not in this case—because there is no suggestion that the plaintiff was aware that cross-country skiing was permitted and so could have been induced by such awareness to think sledding must be permitted as well—and probably not in any case. Although signs are a common way of warning off a visitor who would otherwise think himself invited to use the owner's property in a particular way, *St. Mary's Medical Center of Evanston, Inc. v. Loomis*, 783 N.E.2d 274, 282-83 (Ind. App. 2002), they must be so placed as to be reasonably calculated to be seen by the visitor. *City of Indianapolis v. Johnson*, 736 N.E.2d 295, 298-99 (Ind. App. 2000). But Indiana Dunes National Lakeshore occupies 15,000 acres and extends for 25 miles along the shore of Lake Michigan. It has a huge perimeter. There are many points of entry (even ignoring the lake itself), and it would be a formidable undertaking to post enough signs about sledding to assure that the prohibition was known to all visitors—formidable, too, to anchor the signs so securely that the shifting sands could not dislodge or bury them. Cf. *Fryman v. United States*, 901 F.2d 79, 82 (7th Cir. 1990). The purpose of the Indiana Recreational Use Statute would be undermined if landowners who threw their

land open to the public for some purposes had to undertake heroic efforts to make sure that no member of the public misunderstood the limits of the permission. See *Blakely v. Camp Ondessonk*, 38 F.3d 325, 327-28 (7th Cir. 1994) (Illinois law).

There may seem an element of unreality in treating the federal government as if it were a private landowner. Enabling a person to shift the costs of his activity to the public at large is a fairly common legal technique for encouraging the person to provide a service to the public for which he cannot charge. A pertinent, if anachronistic, example is the charitable tort immunity. E.g., *St. Vincent College v. Hallett*, 201 F. 471, 481 (7th Cir. 1912); *Gilbert v. Seton Hall University*, 332 F.3d 105, 110 (2d Cir. 2003). In economic terminology, the immunity is a method of ex- ternalizing costs (shifting them to others' shoulders—tort victims') in order to encourage the externalization of benefits (the conferral of benefits on others) by reducing the costs of the enterprise. The Recreational Use Statute is an example of the technique. Landowners are relieved from the costs of the usual tort liabilities of occupiers of land in order to encourage them to provide a public benefit. But although the federal government doesn't require such encouragement in order to create national parks, an increase in its liability costs could induce the park service to limit public access, perhaps severely. In any event the Tort Claims Act requires that the federal government be treated no worse in a tort suit than if it were a private entity, however differently motivated.

If Matheny was not an invitee, as we hold, she was either a trespasser or a licensee. At common law a land- owner owes neither type of user of its land a duty of due care, but owes both a duty not to set a trap, and also a duty to warn of a trap that he is or should be aware of

on his land by whomever the trap was set, including nature. E.g., *Gaboury v. Ireland Road Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314-15 (Ind. 1983); *Keane v. Schroeder*, 264 N.E.2d 95, 99-100 (Ind. App. 1970); *Restatement (Second) of Torts* § 342 (1965). (A "trap" for this purpose is merely a menace hidden from the licensee or trespasser. E.g., *Gaboury v. Ireland Road Grace Brethren, Inc.*, *supra*, 446 N.E.2d at 1315; *Harper v. Kampschaefer*, 549 N.E.2d 1067, 1070 (Ind. App. 1990); see *Taylor v. Duke*, 713 N.E.2d 877, 881-82 (Ind. App. 1999).) And failure to warn of a trap is a possible characterization of the government's behavior in this case. But the recreational-use statute abrogates liability to trespassers and licensees unless the landowner has acted with "malice." So Matheny's only chance is to show that the government was guilty of "malice" in failing to remove the pipe that injured her.

The district court closed this door by ruling that "malice" means an act that is "malicious" in the ordinary meaning of the word. In so ruling the court did not, because it could not, rely on the Indiana courts' interpretation of the word as it appears in the recreational-use statute; there is no judicial interpretation of it except in a previous district court opinion, *Reed v. United States*, 604 F. Supp. 1253, 1261 (N.D. Ind. 1984), which is not authoritative; district court opinions do not have precedential authority. *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1003 (7th Cir. 1996); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

Unfortunately the word "malice" does not have a settled meaning in law. Sometimes it means ill will, hatred, "evil design," or, in short, "malice" in its everyday sense. *Fryback v. State*, 400 N.E.2d 1128, 1131 (Ind. 1980); *Ford v. State*, 35 N.E. 34, 35 (Ind. App. 1893); *Higgason v. Clark*, 984 F.2d 203, 207 (7th Cir. 1993). But sometimes, as in defamation law (also in criminal law), it means simply knowledge

of the harmful consequences of an act or—what is simply a very high degree of negligence—recklessness (the publisher thought it highly likely, without knowing for certain, that the defamatory piece he was publishing was false, and he did nothing to determine whether it was in fact false). *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964); *Journal-Gazette Co. v. Bandido's, Inc.,* 712 N.E.2d 446, 456 (Ind. 1999); *Blackburn v. State*, 291 N.E.2d 686, 695 (Ind. 1973); *United States v. Serawop*, 410 F.3d 656, 663 and n. 4 (10th Cir. 2005).

Although we cannot be certain what the word means in the Indiana Recreational Use Statute, it is unlikely that it means merely knowledge or recklessness. For that is the same state of mind that is required to hold a landowner liable for a trap that injures a licensee or trespasser. E.g., *Swanson v. Shroat*, 345 N.E.2d 872, 877 (Ind. App. 1976); *Davis v. United States*, 716 F.2d 418, 425-26 (7th Cir. 1983). If "malice" bore the same meaning in the statute, the statute would not have changed the common law. That cannot be correct.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*