In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2849

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DANIEL L. DELANEY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:11-cr-00005-JMS-CMM-1—**Jane E. Magnus-Stinson**, *Judge*.

ARGUED MAY 1, 2013—DECIDED MAY 30, 2013

Before BAUER, POSNER, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, a federal prisoner serving a term for unarmed robbery and confined in a two-person cell in the prison's segregation unit because of a fight he'd had with another inmate, strangled his cellmate. He was prosecuted, convicted by a jury of first-degree murder, and sentenced to life in prison. The single issue presented by his appeal is

whether the jury should have found that he killed in "the heat of passion" and should therefore have convicted him only of voluntary manslaughter.

Late one night, as a guard walked past the defendant's cell, the defendant told him that he had to be moved to a new cell and that "he [the cellmate] had [had] to go. He was a child molester." The cellmate was lying on the floor of the cell, dead. His wrists were bound with a piece of bedsheet. Another piece of bedsheet was tied tightly around his neck with multiple knots. He was bruised and bleeding from a number of nonfatal wounds inflicted on him by the defendant with his fists and with the victim's cane before the strangulation. A substantially older and weaker man than the defendant, the victim had apparently put up no resistance to the defendant's assaults.

Interviewed by an FBI agent shortly after the killing, the defendant said that he had shared a cell with the victim for a couple of weeks and during this time had noticed inconsistencies in his cellmate's account of his background and had eventually elicited an admission that the cellmate was in prison for having sexually abused a child. The defendant told the agent that he had attacked the cellmate "after some thought." But at his trial he testified that as a child he had been sexually abused by his uncle and that upon hearing his cellmate admit to having been twice convicted of child molestation "all sorts of flashes" had lit up his mind and he had snapped, but that he "didn't really intend nothing . . . . I want[ed] to, like, beat him up, you know?"

The federal criminal code defines murder as

> the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. Any other murder is murder in the second degree.

18 U.S.C. § 1111(a). The maximum punishment for first-degree murder is death and for second-degree murder is life in prison. § 1111(b).

The judge instructed the jury that

> "malice" is the state of mind that would cause a person to act without regard to the life of another. To act with "malice aforethought" means that the defendant took someone's life deliberately and in-tentionally or willfully acted with callous and wanton disregard for human life. It doesn't matter whether the defendant hated the victim or felt any ill will toward the victim at the time. But the gov-ernment must prove beyond a reasonable doubt that the defendant intended to kill or willfully acted

with callous and wanton disregard for the consequences, knowing that a serious risk of serious bodily harm or death would result.

In contrast to murder, manslaughter is defined in the criminal code as "the unlawful killing of a human being without malice. It is of two kinds: Voluntary—Upon a sudden quarrel or heat of passion. Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Only "heat of passion" manslaughter, a subset of voluntary manslaughter, is relevant to this case. The maximum punishment for voluntary manslaughter is 15 years in prison. § 1112(b).

The judge instructed the jury that to find the defendant guilty of manslaughter rather than of murder it had to find that he'd killed his cellmate "intentionally but without malice and in the heat of passion." And she instructed that "heat of passion" means

> a passion of fear or rage that caused the defendant to lose his normal self-control as a result of circumstances that would provoke such passion in an ordinary person, but which did not justify the use of deadly force. Heat of passion may be provoked by fear, rage, anger or terror. Provocation, in order to be adequate, must be such as might naturally cause a reasonable person in the passion of the moment to lose self-control and act on impulse and without reflection.

The abstract and archaic language in which the statutory provisions and jury instructions we've quoted abound, though familiar to lawyers and judges, must be confusing to many laypersons, including jurors. Both first- and second-degree murder require "malice aforethought," which means that the murderer had to have harbored before the killing a conscious intention to kill. The word "aforethought" has disappeared from ordinary language, however, and "malice" has in ordinary language today a narrower meaning than intent to kill, which is the meaning it bears in "malice aforethought." That term (originally "malice prepensed," "prepensed" meaning the same thing as "aforethought"—namely thought of in advance of the crime) is of medieval origin. Rollin M. Perkins, "A Re-Examination of Malice Aforethought," 43 *Yale L.J.* 537, 543-44 (1934). That such terms should appear in modern statutes and jury instructions (though not in all of them: for example, Illinois's criminal code and pattern criminal jury instructions are written in plain language and dispense with "premeditation," "malice," and other technical legal terms entirely; see, for example, 720 ILCS 5/9 and Illinois Pattern Jury Instructions—Criminal 7.0 (2013)) testifies to the legal profession's linguistic conservatism.

And sometimes linguistic ineptitude. The term "malice aforethought" is sometimes written "malice of forethought." See Eric M. Johnson, "U.S. Soldier Pleads Guilty to Murdering Fellow Servicemen in Iraq," *Reuters*, Apr. 22, 2013, www.reuters.com/article/2013/04/22/us-usa-iraq-courtmartial-idUSBRE93L0EL20130422 (visited May

24, 2013) (the "trial will determine…whether he acted on impulse, as his defense attorneys argue, or with malice of forethought, as alleged by military prosecutors"). This barbarism has appeared in jury instructions, as noted in *Alexander v. Foltz*, 838 F.2d 140, 144 (6th Cir. 1988). No surprise, really; for the word "malice" has no consistent meaning in law, as remarked in *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 323-24 (7th Cir. 2012), and *Matheny v. United States*, 469 F.3d 1093, 1097 (7th Cir. 2006); cf. Wayne R. LaFave, *Substantive Criminal Law* §§ 14.1(a), 21.3(e) ( 2d ed. 2003).

The only difference between the two degrees of murder, sharing as they do the requirement that the murderer have acted with "malice aforethought," is, as stated in section 1111(a) of the federal criminal code, that a first-degree murder, unless committed in the course of perpetrating one (or more) of the crimes, such as arson or robbery (but confusingly including murder), that are specified in the statute, must be "premeditated." The exception for killing in the course of perpetrating one of the specified crimes (that is, the exception for felony murder, which is first-degree murder even though there is no intent to kill) is limited to "deaths resulting from acts of violence committed in the furtherance of particularly dangerous felonies." Guyora Binder, "The Culpability of Felony Murder," 83 *Notre Dame L. Rev.* 965, 978 (2008).

Second-degree murder does not involve premeditation—but remember that it must be consciously intended, therefore thought about in advance, and there-

fore in a sense premeditated, for otherwise it would not involve "malice aforethought." But what is true is that the more planning that goes into a murder, the likelier the murderer is to elude detection, and that is an argument for a heavier sentence. 18 U.S.C. § 3592(c)(9); *United States v. Snarr*, 704 F.3d 368, 392 (5th Cir. 2013); *United States v. Richart*, 662 F.3d 1037, 1048 (8th Cir. 2011); *Suggs v. McNeil*, 609 F.3d 1218, 1232 (11th Cir. 2010). And so premeditation has generally been understood to require more forethought than mere "aforethought" (and for the additional reason that otherwise the two terms, malice aforethought and premeditation, would collapse into one, erasing the distinction between first- and second-degree murder). In contrast to malice aforethought, premeditation requires that "an *appreciable* time elapse between formation of the design and the fatal act within which there is, in fact, deliberation." *Fisher v. United States*, 328 U.S. 463, 469 n. 3 (1946) (emphasis added); see also *United States v. Catalán-Roman*, 585 F.3d 453, 474 (1st Cir. 2009); *House v. Bell*, 311 F.3d 767, 774 (6th Cir. 2002); *Austin v. United States*, 382 F.2d 129, 135 (D.C. Cir. 1967).

The word "appreciable" is vague, however, and the judge in this case improved upon it by instructing the jury that to find the defendant guilty of first-degree murder it would have to find "that the killing was in cold blood after the defendant had time to think over the matter and form the intent to kill. There's no exact amount of time that must pass between forming the intent to kill and the killing itself. But it must be enough time for the killer to be fully conscious of having the intent to kill." The jury in this case, as in the

rather similar prison murder case of *United States v. Brown*, 518 F.2d 821, 826-27 (7th Cir. 1975), could find that the defendant's fatal assault on his cellmate was pondered rather than being spontaneous or nearly so, and therefore that the "appreciable time" gloss on "premeditated" fit the case.

The American Law Institute's Model Penal Code eliminated the distinction between first- and second-degree murder. The Code defined murder simply as homicide "committed purposely or knowingly," or "committed recklessly under circumstances manifesting extreme indifference to the value of human life." American Law Institute, *Model Penal Code* § 210.2(1) (1962). That seems an improvement over requiring a jury determination of "malice aforethought" or "premeditation." For as the ALI later explained,

> the case for a mitigated sentence on conviction of murder does not depend on a distinction between impulse and deliberation. Prior reflection may reveal the uncertainties of a tortured conscience rather than exceptional depravity. The very fact of a long internal struggle may be evidence that the homicidal impulse was deeply aberrational . . . . It also seems clear, moreover, that some purely impulsive murders will present no extenuating circumstances. The suddenness of the killing may simply reveal callousness so complete and depravity so extreme that no hesitation is required.

American Law Institute, *Model Penal Code and Commentaries*, comment to § 210.7, p. 127 (1980).

We needn't pursue the issue of degrees of murder further. The defendant isn't arguing that if his crime wasn't manslaughter it was second-degree murder rather than first degree. He is arguing that he should not have been convicted of murder at all but only of voluntary manslaughter, with its 15-year maximum sentence—that no reasonable jury could have failed to find that he acted in the "heat of passion."

What is said to distinguish killing in the heat of passion from murder is absence of malice. *United States v. Serawop*, 410 F.3d 656, 665-66 (10th Cir. 2005); *United States v. Velazquez*, 246 F.3d 204, 212 (2d Cir. 2001); *United States v. Browner*, 889 F.2d 549, 552 (5th Cir. 1989); *United States v. Fountain*, 642 F.2d 1083, 1096 (7th Cir. 1981). For remember that the judge instructed the jury that it should convict the defendant of voluntary manslaughter if it found that he had killed his cellmate "intentionally but without malice and in the heat of passion." This is puzzling, because "malice aforethought" in the statute means intent and so what does it mean to say that a person did something intentionally but without malice? (In her instruction the judge defined "malice aforethought" to mean "that the defendant took someone's life deliberately and intentionally *or willfully acted with callous and wanton disregard for human life*," but the addendum that we've italicized is actually part of the traditional common law concept of "malice," see, e.g., *United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996); *McFadden v. United States*, 814 F.3d 144, 146 (3d Cir. 1987), and does not appear in 18 U.S.C. § 1111(a).)

Another puzzle is created by the judge's instructing the jury that to return a verdict of "heat of passion" manslaughter it must determine that the "passion . . . caused the defendant to lose his normal self-control as a result of circumstances that would provoke such passion in an *ordinary* person"—that thus would "*naturally* cause a *reasonable* person in the passion of the moment to lose self-control and act on impulse and without reflection" (emphases added). The average or ordinary, and *a fortiori* the reasonable, person does not fly into a rage and kill a person who is not threatening him with death or bodily injury.

But should average or ordinary or reasonable refer, rather, to what is average or ordinary or reasonable in a subset of the population, such as the subset consisting of past victims of child sexual abuse? Maybe the relevant question is whether the average person who has been sexually molested as a child has a powerful propensity to kill a known sexual molester (not necessarily of himself). Some victims of sexual molestation do. The strangler of a convicted child molester (a former priest who had molested some 130 children) took the stand to "argu[e] that his own molestation as a child and years in prison had filled him with rage." Associated Press, "Inmate Testifies Why He Killed Molester Priest," *N.Y. Times*, Jan. 24, 2006, www.nytimes.com/2006/01/24/national/24priest.html.  In another case a man who killed two sex offenders was acclaimed by some persons as a hero, which might encourage such murders. Isolde Raftery, "Man Sentenced to Life for Killing Sex Offenders; Judge Chastises Supporters," *NBC News*, Sept. 18, 2012, http://usnews.nbcnews.com/_

news/2012/09/18/13943695-man-sentenced-to-life-for-killing-sex-offenders-judge-chastises-supporters (both websites were visited on May 24, 2013). Nevertheless no evidence was presented in this case that murder of a sexual molester is a common reaction of a person who has been sexually molested.

Again one looks to the Model Penal Code for thoughtful advice. It defines a heat-of-passion killing, more clearly than the judge's instruction in this case did, as "a homicide which would otherwise be murder . . . committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be." American Law Institute, *Model Penal Code*, § 210.3(1)(b) (1962). The second sentence asks the jury to consider whether there was something in the defendant's background that made him especially susceptible to killing in the heat of passion.

This section of the Code has garnered some support among state courts. See *Patterson v. New York*, 432 U.S. 197, 206-07 (1977); *Wellman v. Commonwealth*, 694 S.W.2d 696, 697-98 (Ky. 1985); Mitchell N. Berman & Ian P. Farrell, "Provocation Manslaughter as Partial Justification and Partial Excuse," 52 *Wm. & Mary L. Rev.* 1027, 1044 n. 64 (2011). Others, however, worry that the approach is too subjective—leaves too much to speculation. See, e.g., *State v. Bird*, 734 N.W.2d 664, 676-77 (Minn. 2007).

No matter; our defendant doesn't quarrel with the heat-of-passion instruction. He argues only that no reasonable

juror could have failed to find that he had acted in the heat of passion when he killed his cellmate. The argument fails because there was considerable evidence of forethought, much of it emanating from the defendant's own statements. He admitted to the prison guard that the cellmate, because a child molester, "had to" be killed, and to the FBI agent that he had attacked the cellmate "after some thought." His testimony at trial was different, suggestive of an act triggered by spontaneous rage, but the jury was entitled to believe his pretrial admissions instead.

It remains only to note the seeming oddity that the government bore—and has been held required by the due process clause to bear—the burden of proving absence of heat of passion beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 703-04 (1975); see also *United States v. Martinez*, 988 F.2d 685, 690 (7th Cir. 1993); *United States v. Lofton*, 776 F.2d 918, 921-22 (10th Cir. 1985). To prove that a defendant killed in the heat of passion seems like proving a defense to a charge of murder (as distinct from manslaughter), and usually the proponent of a defense bears the burden of proving it. It would be very strange to allow a defendant to list every possible defense to the charges against him and require the prosecution to negate every one of them beyond a reasonable doubt in order to avoid an acquittal. And so the cases require the defendant to make an initial showing that the defense has some evidentiary support; only then is the burden of proof beyond a reasonable laid on the government. *United States v. Begay*, 673 F.3d 1038, 1045 (9th Cir. 2011) (en banc); *United States v. Lofton*, *supra*, 776

F.2d at 920. That happened here—the defendant's testimony at trial about having "snapped," and so killed in blind rage, triggered the requirement that the government prove beyond a reasonable doubt that he had *not* killed in the heat of passion.

Probably "heat of passion" shouldn't be thought a defense. The jury had to find malice beyond a reasonable doubt in order to convict the defendant of murder, and so evidence that he acted in the heat of passion and therefore without malice would if believed require the jury to acquit him of the charge of murder. (Similarly, if a defendant presents some evidence of entrapment, the prosecution must prove beyond a reasonable doubt that he was not entrapped, *Jacobson v. United States,* 503 U.S. 540, 548-49 (1992); *United States v. Pillado*, 656 F.3d 754, 763 (7th Cir. 2011), since if he was entrapped this would negate culpability.) The heat of passion "defense" just puts the government to its proof. To prove that a defendant has killed in the heat of passion is unlike proof that the statute of limitations has run, because proof that prosecution is time-barred does not negate any element of the crime. *Smith v. United States*, 133 S.Ct. 714, 720 (2013).

But since the jury had solid grounds for finding murder rather than manslaughter, the judgment is

AFFIRMED.

BAUER, *Circuit Judge*, concurring.  I have to admit that this opinion had me in suspense until the last minute. I'm not sure it provides a clear trail for future prosecutions but I sign on because the result is in keeping with the evidence.

5-30-13